J. S25031/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: Z.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.B., FATHER | : | No. 3755 EDA 2016 |

Appeal from the Order Entered October 27, 2016,
in the Court of Common Pleas of Monroe County
Orphans' Court Division at No. 2016-00028

| | | |
|---|---|---|
| IN RE: Z.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.B., FATHER | : | No. 3757 EDA 2016 |

Appeal from the Order Entered October 27, 2016,
in the Court of Common Pleas of Monroe County
Orphans' Court Division at No. 2016-00029

BEFORE: BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JUNE 14, 2017**

T.B. ("Father") appeals from the orders dated October 26, 2016, and entered October 27, 2016,[1] in the Court of Common Pleas of Monroe County, granting the petition of the Monroe County Children and Youth Services ("CYS") and involuntarily terminating his parental rights to his minor,

---

[1] While dated October 26, 2016, the orders were not docketed and entered for purposes of Pa.R.C.P. 236(b) until October 27, 2016. **See Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").

J. S25031/17

dependent daughters, Z.B.1, born in July of 2006, and Z.B.2, born in August of 2005 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[2, 3] After review, we affirm.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> 4. Monroe County Children and Youth Services (CYS) received a referral on April 14, 2014 that [Z.B.2] was truant for nineteen (19) days and subsequent referrals for truancy were received for siblings [Z.B.1] and [T.T.1[4]]
>
> 5. There were also concerns about Mother's use of alcohol, supervision and housing.
>
> 6. Mother and children were evicted from at least two (2) shelters due to alcohol use, lack of supervision and non-compliance with rules.
>
> 7. Maternal Grandmother's paramour, [O.Y.] (father of [Z.B.2]'s half-brother [Z.T.])[,] allegedly assaulted [Mother] outside of one shelter and the police were called.
>
> 8. Emergency Protective Custody of all of the children (except [Z.T.], who was not yet born) was granted by the Honorable Jonathan Mark

---

[2] By the same orders, the trial court involuntarily terminated the parental rights of the Children's mother, A.T. ("Mother"). Mother has not appealed, nor is she a party to the instant appeals.

[3] During the same proceedings, the court additionally dealt with the termination of parental rights of Mother's three younger children, Children's half-siblings, T.T.1, T.T.2, and Z.T., who are not the subject of the instant appeals.

[4] Also on April 14, 2014, CYS received a referral that Z.B.1 was truant for 24 days. (Opinion (Z.B.1), 10/27/16 at 2, findings of fact ¶ 4.)

on May 27, 2014 and continued at the Shelter Care hearing held May 30, 2014. The children (except [Z.T.]) were found to be dependent children by the Honorable David J. Williamson by Order dated June 9, 2014.

9. Said placement of the children (except [Z.T.]) was reviewed and continued by further Orders of Court dated August 29, 2014, December 15, 2014, March 18, 2015, July 17, 2015, November 2, 2015, January 12, 2016, April 22, 2016 and July 26, 2016.

10. The children's goal was changed to Adoption by said Order of Court dated January 12, 2016.

11. CYS referred [Mother] for D&A treatment, but she continued to test positive for alcohol and did not provide regular urine screens at the time of the first review hearing on August 22, 2014.

12. Mother attended a D&A evaluation that month and met a need for outpatient treatment.

13. Mother has not yet engaged in parenting education, has not secured employment and has not obtained appropriate housing.

14. Mother has been late for visits and at least twice she appeared under the influence of alcohol.

15. Mother has also missed visits.

16. Mother has continued to use alcohol and she has a drinking problem which she refuses to acknowledge.

17. On September 8, 2014, CYS was advised that Catholic Social Services had located a bed for [Mother] at a treatment facility which was available that day. [Mother] did not wish to enter the facility that day, saying she wanted

to have a visit with her children before she went. [Mother] was then approved for funding to attend a seven day detox program. [Mother] reported that she was recommended for inpatient treatment, but she did not wish to attend inpatient.

18. Mother has made repeated excuses about attending alcohol rehabilitation, and when she finally did attend a local inpatient facility, Hillside Treatment Facility, she left early and against medical advice.

19. Mother reported incidents of domestic violence by [O.Y.], in early September, 2014 and again on October 10, 2014.

20. [O.Y.] and Mother both filed a Petition for Protection from Abuse against each other.

21. Mother also has mental health issues and she attended an intake assessment with Catholic Social Services and met a need for services with weekly D & A counseling, and assignment of a case manager.

22. Mother made some improvements and after she gave birth to a son, [Z.T.], [T.T.2] and [T.T.1] were scheduled to return to her care; however, Mother provided a urine screen and the result came back positive for alcohol on June 23, 2015 at .04%, and the children returned to foster care at that time, and [Z.T.] ended up dependent as well.

23. Mother submitted no urine drug screens from August 2015 through November 2015; then completed thirty (30) days of screens, three times per week and was negative throughout that time, and visits were moved to the home, supervised by an advisor on a weekly basis.

24. Mother was then scheduled to enter another alcohol rehabilitation program, New

Perspectives, in December 2015, but she failed to do so.

25. Mother stopped submitting urine drug screens in December 2015.

26. Mother was incarcerated on April 13, 2016 for public drunkenness, and on May 13, 2016, Mother had an open container of beer in the CYS visit room.

27. Mother was then required to complete a breathalyzer prior to visits and she has registered a high alcohol level several times causing visits to be cancelled.

28. Mother has not addressed her mental health needs, nor obtained stable housing, nor remained employed.

29. [Mother] was involved in another domestic violence incident with [O.Y.] on June 29, 2016 resulting in criminal charges. Mother had alleged [O.Y.] fired a gun in her direction.

30. [Father] attended the initial shelter care hearing, but reported he was unable to be a resource for his daughters at that time.

31. He provided a urine drug screen at that time and it was positive for cocaine and morphine.

32. [Father] entered Damon House, a residential rehabilitation center in Brooklyn, New York, early in [Z.B.2's] dependency and provided negative screens to the facility and attended counseling and parent education classes.

33. [Father] claims he is now clean and sober and he resides with his parents.

34.   [Father] attended only one visit with [Z.B.2] and [Z.B.1] on February 23, 2015.[5]

35.   [Father] is disabled and receives S.S.I. ["Supplemental Security Income"] from New York State.

36.   He lives in the basement of his parents' house that has two (2) rooms and a bathroom.

37.   [Father] has transportation issues and depends on his parents to drive him.

38.   [Z.B.2] and [Z.B.1] are placed in a pre-adoptive placement with their sister [T.T.1].

Opinion (Z.B.2), 10/27/16 at 2-5.[6]

On July 28, 2016, CYS filed petitions to involuntarily terminate parental rights. Thereafter, the trial court conducted termination hearings on September 21, 2016, and October 7, 2016. In support of its petitions, CYS presented the testimony of CYS caseworkers, Jillian Skolnik and Jennifer Payne, and CYS case supervisor, Michele Haydt. Further, CYS offered CYS Exhibits 1 through 44, which were admitted into evidence on September 21, 2016. (Notes of testimony, 9/21/16 at 52, 116.) Mother

---

[5] Father testified that he saw the Children on Thanksgiving 2014 in New Jersey. (Notes of testimony, 10/7/16 at 36-38, 53-54. *See also* Father's Exhibit 1.) He additionally testified to a second visit with the Children in Pennsylvania (*id.* at 50), as well as to telephone calls and other contact, such as sending gifts and money. (*Id.* at 38-40.)

[6] The opinion for Z.B.1 provides similarly. (*See* opinion (Z.B.1), 10/27/16 at 2-5.)

and Father additionally testified on their own behalf.[7] Father also presented the testimony of his mother, M.B.

By orders dated October 26, 2016, and entered October 27, 2016, the trial court involuntarily terminated Father's parental rights to the Children. Accompanying these orders were opinions addressing the rationale for the termination of parental rights. (**See** opinion (Z.B.2), 10/27/16 at 6-13; opinion (Z.B.1), 10/27/16 at 6-13.) On November 28, 2016, Father, through appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this court consolidated **sua sponte** on January 24, 2017. The court issued a statement pursuant to Pa.R.A.P. 1925(a) dated November 29, 2016, and entered November 30, 2016, indicating that it had adequately addressed the issues raised on appeal in its opinion submitted with its order terminating parental rights. (**See** statement pursuant to Pa.R.A.P. 1925(a), 11/10/16.)

On appeal, Father raises the following issue for our review: "Did the lower court abuse its discretion and/or commit an error of law in terminating [F]ather's parental rights where Father remedied the conditions leading to the removal of the [C]hildren?" (Father's brief at 2 (unpaginated).)

---

[7] Z.T.'s father, O.Y., was also present and testified on his own behalf. T.T.1's father, T.P., and T.T.2's father, W.B., were not present; however, T.P. was represented by counsel.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [] 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), as well as (b).[8]

---

[8] We disagree with the trial court as to the application of Section 2511(a)(5) and (8), as the Children were not removed from Father's care. **See** *In re C.S.*, 761 A.2d at 1200 n.5. **See also In re Z.P.**, 994 A.2d 1108, 1121, 1123 n.3 (Pa.Super. 2010.)

However, Father presents a challenge as to Section 2511(a)(8) only.[9] (Father's brief at 5 (unpaginated).) Nonetheless, "w[e] . . . may uphold a decision below if there exists **any** proper basis for the result reached." **See Weber v. Lynch**, 346 A.2d 363, 366 n.6 (Pa.Super. 1975), **affirmed**, 375 A.2d 1278 (Pa. 1977), citing **Hayes v. Wella Corp**., 309 A.2d 817 (Pa.Super. 1973). Further, we have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). **In re B.L.W.,** 843 A.2d 380, 384 (Pa.Super. 2004) (**en banc**). We, therefore, analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

---

[9] Despite additional arguments in his concise statement of errors complained of on appeal, Father only preserved opposition as to Section 2511(a)(8) in his brief. **See Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa.Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved. . . ." ), citing Pa.R.A.P. 2116(a).

> incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b)  Other  considerations.--**The  court  in terminating  the  rights  of  a  parent  shall  give primary  consideration  to  the  developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated  solely  on  the  basis  of environmental  factors  such  as  inadequate housing,  furnishings,  income,  clothing  and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent  to  remedy  the  conditions  described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We  first  address  whether  the  trial  court  abused  its  discretion  by terminating Father's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A.  §  2511(a)(2),  the  following  three elements must be met:  (1) repeated and continued incapacity,  abuse,  neglect  or  refusal;  (2)  such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence  necessary  for  his  physical  or  mental well-being;  and  (3)  the  causes  of  the  incapacity, abuse,  neglect  or  refusal  cannot  or  will  not  be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation

omitted).   "The  grounds  for  termination  due  to  parental  incapacity  that

cannot  be  remedied  are  not  limited  to  affirmative  misconduct.    To  the

- 11 -

contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002).

Instantly, in finding sufficient evidence supporting termination of Father's parental rights pursuant to Section 2511(a)(2), as well as (a)(1), (5), and (8), the trial court reasoned:

> The testimony of [Father]'s parental rights has been established as well. [Father] has had only one visit with his daughters since they became dependent. [Father] has overcome a drug addiction during that time and was in a drug rehab facility. However, [Father] has not visited after his release from rehab. He depends on transportation from his parents. He receives minimal income from disability. He lives in his parents' basement. [Father] wants to maintain a relationship with his daughters. However, he has had minimal contact with them most of their lives and only one visit and sporadic calls in the last twenty [sic] (28) months. The grounds for termination of [Father]'s parental rights have been met under the statute by clear and convincing evidence.

Opinion (Z.B.2), 10/27/16 at 12; opinion (Z.B.1), 10/27/16 at 12. We agree.

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). The Children were removed from Mother's care and entered placement in May of 2014, a period of approximately two and one-half years at the time of the hearing. (***See*** order of court for protective custody, 5/28/14. ***See also*** shelter care order

(Z.B.2), 6/2/14; shelter care order (Z.B.1), 6/2/14.) Further, Father did not successfully complete that which was required of him by CYS. As indicated by CYS caseworker, Jillian Skolnik, Father was to maintain a "healthy and sober lifestyle," stable housing, employment, and income, as well as visitation. (Notes of testimony, 9/21/16 at 20, 26-27, 41.) Although Father completed and was successfully discharged from drug and alcohol treatment, CYS caseworker, Jennifer Payne, indicated a lack of evidence establishing that Father was maintaining his sobriety. (*Id.* at 45, 123-114. ***See also*** CYS Exhibit 5.) In addition, while Father reported receiving disability and residing with his parents, there was no proof of stable housing and income.[10] (*Id.* at 123.) Likewise, Father lacked consistent visitation and contact with the Children, as well as consistent contact with CYS. (*Id.*) As testified by Ms. Payne,

> [T]he goals that were assigned to him in his child permanency plan have not been completed. We haven't seen any successful completion of the drug and alcohol, the housing. . . .
>
> . . .
>
> And then the contact with the agency. He has had no visitations. [The Children] have been in foster

---

[10] While Ms. Payne acknowledged Father's disability would be considered income, she noted that evidence as to this income was not provided to her by Father. (Notes of testimony, 9/21/16 at 125.) Further, as to housing, Ms. Skolnik believed Father suggested that his parents' home did not present enough room for the Children. An investigation of the home was not pursued as the Children were in kinship placement at the time. (*Id.* at 45-46.)

care for, I think, 28 months, and we have no consistent contact or visitation with them.

*Id.*

Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. ***See In re Adoption of M.E.P.***, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. ***See id.*** We, therefore, conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to the Children pursuant to Section 2511(a)(2).

We next determine whether termination was proper under Section 2511(b). Our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa.Super. 2012). In ***In re E.M.***, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015), quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

In determining that termination of Father's parental rights favored the Children's needs and welfare, the trial court concluded:

> It is also in the best interests and well-being of the minor child under Section 2511(b) to terminate parental rights. [Z.B.2], [Z.B.1], and [T.T.1] all live in the same pre-adopt [sic] home. All three want to be adopted and have a permanent home and family. They are bonded to their foster family, and they are at an age where they can express fully what they want. It is important for the children to have this continuity. The factors of Section 2511(b) favor a termination of parental rights and adoption.

Opinion (Z.B.2), 10/27/16 at 13; opinion (Z.B.1), 10/27/16 at 13.

Father, however, failed to preserve a challenge related to Section 2511(b) by failing to raise the issue in the statement of questions involved section of his brief and by failing to present argument related thereto in his brief. As such, we find that Father has waived any claim regarding Section 2511(b) and the Children's needs and welfare. ***See Krebs***, 893 A.2d at 797 (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); ***In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011), ***appeal denied***, 24 A.3d 364 (Pa. 2011), quoting ***In re A.C.***, 991 A.2d 884, 897 (Pa.Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). ***See also In re Adoption of R.K.Y.***, 72 A.3d 669, 679 n.4 (Pa.Super. 2013), ***appeal denied***, 76 A.3d 540 (Pa. 2013) (declining to address Section 2511(b) where not challenged on appeal).

Nevertheless, in light of the requisite bifurcated analysis, we observe that had Father preserved this issue, we would have found it lacked merit. There was sufficient evidence to allow the trial court to make a determination of the Children's needs and welfare, and as to the existence of a bond between Father and the Children that, if severed, would not have a detrimental impact on them. Father has had minimal visitation and/or contact with the Children since their placement. (*Id.* at 123.) The Children themselves acknowledge the lack of significant contact and/or relationship with Father. (Notes of testimony, 10/7/16 at 84, 94.) Further, the Children are placed together in a pre-adoptive foster home with their younger half-sister. (Notes of testimony, 9/21/16 at 110-111.) The Children are happy in their placement. (Notes of testimony, 10/7/16 at 82, 89.) As described by the current CYS caseworker Ms. Payne, "They are doing very well. . . .They are very bonded with [foster mother]." (Notes of testimony, 9/21/16 at 112.) The Children indicate a positive, nurturing relationship with their foster mother, whom they call "mom," as well as with her children. (Notes of testimony, 10/7/16 at 82, 89-90.) Moreover, and more importantly, the Children expressed a desire to be adopted, despite its implications as to their relationship with Father. (*Id.* at 83-84, 92.) Specifically, Z.B.1 indicated a desire to be adopted as she now feels safe, whereas she did not previously. (*Id.* at 92.)

While Father may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b). We, therefore, affirm the orders of the trial court.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2017